IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAURICE CARTEZ STOVALL, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:12CV1035-WHA |
| | ) [WO] |
| LOUIS BOYD, Warden, et al., | ) |
| | ) |
| Respondents. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

Maurice Cartez Stovall filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his conviction for trafficking in cannabis entered against him by the Circuit Court for Montgomery County, Alabama.  Stovall was tried before a jury and convicted of trafficking illegal drugs on December 12, 2011.  *Doc. No. 8-11,* at 76.  On January 31, 2012, he was sentenced to life in prison as an habitual offender, along with fines, penalties, and mandatory drug treatment. *Doc. No. 8-13,* at 194.

Stovall appealed, presenting the following issue on appeal:  "Whether the trial court erred to reversal in overruling Stovall's *Batson* motion and in not requiring the State to give its reasons for the striking of four (4) black members from the jury venire? Yes." *Doc. No. 8-14, at 7*; *see Batson v. Kentucky*, 476 U.S. 79 (1986). Stovall, pro se, attempted to file a reply brief after the State filed its brief, but the Alabama Court of Criminal Appeals struck the reply because Stovall was represented by counsel. *Doc. No. 8-17,* at 1.

The Alabama Court of Criminal Appeals affirmed the conviction. *Doc. No. 8-18*. Stovall sought rehearing, which the Court of Criminal Appeals overruled on September 7, 2012. *Doc. No. 8-20; Doc. No. 8-21*. Stovall sought further review before the Supreme Court of Alabama, and on November 9, 2012, the Alabama Supreme Court denied the petition for writ of certiorari and issued a certificate of judgment. *Doc. No. 8-22*; *Doc. No. 8-23*. Stovall did not seek postconviction relief under Rule 32. This timely federal habeas petition followed.

## II.  HABEAS PETITION

Stovall's initial petition raised the following claim: "The prosecutor used its peremptory challenges to improperly exclude black prospective jurors from serving on the petitioners jury. This claim was objected to at trial but was overruled by the trial court. No hearing was held to require the prosecutor to cite race-neutral reasons for using peremptory challenges against all or most of the blacks by the prosecutor." *Doc. No. 1*, at 4. Stovall asked the Court to "reverse and remand to the trial court to hold an evidentiary hearing concerning Stovall's 'Batson' claim, or reverse judgement and vacate Stovall's conviction, or reverse/remand to trial court for new trial." *Doc. No. 1*, at 14.

Respondents filed an answer to Stovall's habeas application in accordance with the provisions of Rule 5, *Rules Governing Section 2254 Cases in the United States District Courts*, arguing the petition is due to be denied. *Doc. No. 8.* Specifically, Respondents argued the decision by the Alabama Court of Criminal Appeals does not warrant relief under

the federal habeas statute, 28 U.S.C. § 2254(d), because the state court ruling is not contrary to, or an unreasonable application of, clearly established United States Supreme Court law, and the state court decisions were not the result of an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Doc. No. 8,* at 5, 7; *see* 28 U.S.C. § 2254(d).

This Court entered an order advising Stovall of the constraints that 28 U.S.C. § 2254(d)(1) places on the power of a federal court to grant relief, and granting Stovall an opportunity to file a reply. *Doc. No. 9.* Stovall filed an amended petition, asserting "that the State's striking of potential black jurors numbered 19 - Bailey and 353- Myrick, was based solely on race as neither of these individuals responded to any questions posed . . . during voir dire. . . . The State [improperly] struck . . . black members . . . 315, 503 [who responded in the affirmative to a question from defense counsel regarding the fairness of tricking a defendant into committing a crime but] did not strike white jurors . . . or . . . an Asian juror, who res[p]onded in the affirmative." *Doc. No. 11*, at 2.

In a supplemental response, Respondent argued that Stovall's claims regarding the strikes utilized against specific black venire members were procedurally defaulted because Stovall failed to properly exhaust these claims during the direct appeal process, and the last state court to address these claims deemed them procedurally barred from review. *Doc. No. 13,* at 3. The Court then advised Stovall of the hurdles in obtaining review of procedurally defaulted claims and invited him to file a reply. *Doc. No. 14*. Stovall filed a supplemental

reply. *Doc. No. 15.*

After reviewing the § 2254 petition, Respondents' answers, Stovall's replies, the state court record, and applicable federal law, the Court concludes that no evidentiary hearing is required, and the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

### III.  STANDARD OF REVIEW AND DISCUSSION

This federal court may consider a petition "for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Consequently, this Court has authority to grant habeas relief for errors of federal constitutional law only, not state law.  *Id.*; *see also Ferguson v. Secretary, Dept. Corrections*, 580 F.3d 1183, 1211-12 (11th Cir. 2009) (claim involving solely state law issues could not serve as the basis for a federal habeas claim).

### A. PROCEDURALLY DEFAULTED CLAIM

Before a petitioner may obtain federal habeas corpus review, he must "exhaust" his federal claims by raising them in the appropriate court, *see* 28 U.S.C. § 2254(b), (c), giving the state courts an opportunity to decide the merits of the constitutional issues raised.  *See Duncan v. Walker*, 533 U.S. 167, 178-79 (2001) ("The exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack

upon that judgment."). To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Federal habeas review is also unavailable if a petitioner "procedurally defaults" a claim because the state court decision on the claim was based on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). For example, a petitioner who did not comply with a state procedural rule about timely filing a particular claim in state court, or who waived a claim by failing to raise it, "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Id.* at 732. But the petitioner "procedurally defaulted" the federal claim under an adequate and independent state rule. *Id.* at 750. The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).

Stovall presented his claim regarding the peremptory strikes against specific jurors to the Alabama state appellate courts. *Doc. No. 8-14,* at 13; *Doc. No. 8-16,* at 7. The state court ruled, however, that Stovall's claim was not preserved properly under Alabama state procedural rules. *Doc. No. 8-18*, at 3 (citing *State v. Pate*, 601 So.2d 210, 213 (Ala. Crim. App. 1992)). This Court must respect the Alabama decision as an adequate and independent state law ground precluding federal review. *See Coleman*, 501 U.S. at 729. Consequently,

Stovall technically "exhausted" the claim for federal habeas purposes, but he procedurally defaulted the issue under an adequate and independent state court ground.

This court can reach the merits of procedurally defaulted claims "only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default. *See Murray v. Carrier,* 477 U.S. 478, 485 (1986); *[Wainwright v.] Sykes*, 433 U.S. [72,] 87 [(1977)]. . . . Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id*." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

### A. Cause and Prejudice

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson*, 353 F.3d at 892.

This court afforded Stovall an opportunity to demonstrate the existence of cause for his failure to properly raise his defaulted claim in the state courts and prejudice resulting from this failure. *Doc. No. 14.* Stovall responded that Respondent's supplemental response

pertained only to Stovall's supplemental claim and not the claims in his original petition. *Doc. No. 15*, at 1. There was no need for Respondent to address the claims in the initial petition, as Respondent addressed them in the initial response. *Doc. No. 8.* As for the supplemental claims, Stovall insists that he did raise the argument before the state courts. *Doc. No. 15*, at 3 (citing "Trial Record 'R-6 thru R-22).["][1] The state court record, however, does not bear out Stovall's assertion. Stovall, as the Alabama Court of Criminal Appeals held, did not preserve the issue for review under Alabama state law. *Doc. No. 8-18*, at 3. The Alabama state court decision is an adequate and independent state court ground precluding federal review of Stovall's claim. *Coleman*, 501 U.S. at 750. Stovall makes no argument to satisfy the rigorous standard to establish cause and prejudice. Based on the pleadings, documents, and records filed in this case, the court finds that Stovall has not established the existence of any "objective factor external to the defense that prevented [him] from raising the claim[s] and which cannot be fairly attributable to his own conduct." *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (citing *Murray*, 477 U.S. at 488). Stovall has, therefore, failed to demonstrate cause for his failure to present his claims to the state courts in compliance with applicable procedural rules. Likewise, Stovall has not shown the existence of actual prejudice emanating from infringement of federal law.

---

[1]It is unclear what Stovall refers to in "Trial Record R-6 thru R-22." The appellate appendix includes various motions and the peremptory strikes. *Doc. No. 8-11*, at 6-22. The trial transcript covers part of jury selection. *Doc. No. 8-13*, at 24-40. In neither part of the record Stovall cites did Stovall assert the argument he now raises about the individual black jurors.

### B. Fundamental Miscarriage of Justice

Nevertheless, this court may still reach the merits of Stovall's procedurally defaulted claim in order to prevent a fundamental miscarriage of justice. Actual innocence is not an independent claim; instead, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). The miscarriage of justice standard is directly linked to actual innocence. *Id.* at 321. In this context, a petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623-24 (1998); *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001); *see also Schlup,* 513 U.S. at 324 (providing examples of new evidence such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial"). Actual innocence requires a petitioner to show that in light of the new evidence, "'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley,* 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28); *see also House v. Bell,* 547 U.S. 518, 538 (2006). This standard is demanding, and such showings are available "only in the 'extraordinary' case." *House*, 547 U.S. at 538 (citations omitted).

Stovall does not assert that he has "new" reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the court does not reach the merits of his defaulted claim. Stovall simply presents no evidence nor suggests

that any exists which could satisfy the difficult standard set forth in *Schlup*. Stovall's procedurally defaulted claim is, therefore, foreclosed from federal habeas review.

### B. CLAIM PROPERLY BEFORE THE COURT

Respondent concedes that Stovall's *Batson* claim as he raised it before the Alabama Court of Criminal Appeals is properly before this federal court. *Doc. No. 8*. Stovall argues that the State impermissibly used four of its six strikes to remove black persons from the jury, that the percentage of blacks left on the jury was disproportionate to the number of blacks on the panel, and that the percentage of blacks left on the jury was disproportionate to the number of blacks in the general population in Montgomery County. *Doc. No. 1*, at 1; *Doc. No. 8-18*, at 3.

For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Congress, through passage of AEDPA in 1996, "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The United States Supreme Court has held that a state court decision is "contrary to"

federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Id.* at 694 (citing *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000)). Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams*, 529 U.S. at 411-13 (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See id.* at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The Court of Appeals for the Eleventh Circuit has held, "[c]learly established federal law is *not* the law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.'" *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis in original, quoting *Williams*, 529 U.S. at 412); *see also Joyner v. Barnes*, 135 S. Ct. 2643, 2645 (2015) (Thomas, J., dissenting from denial of cert.) ("One of the all too common errors that some federal courts make in applying § 2254(d) is to look to their own precedents as the source of 'clearly established Federal law' for purposes of § 2254(d)(1), even though that provision

expressly limits that category to Supreme Court precedents."). The reviewing court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "In order to merit AEDPA deference the state court need not expressly identify Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner 's argument." *Smith v. Sec'y, Dept. of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009). All that is required under § 2254(d)(1) [for deference to the decision of the state court] is an adjudication on the merits, not a full state court opinion." *Parker v. Sec'y, Dept. of Corr.*,331 F.3d 764, 776 (11th Cir. 2003).

Federal habeas courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas Stovall "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (quoting *Harrington*, 562 U.S. at 102, and further quotation marks

omitted). "The usual 'presumption that state courts know and follow the law' is even stronger in the AEDPA context because § 2254(d)'s 'highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt.'" *Allen v. Secretary, Florida Dept. of Corr.*, 611 F.3d 740, 748 (11th Cir. 2010) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted)). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 562 U.S. at 102.

Except for certain kinds of error that require automatic reversal, even when a petitioner's federal rights are violated, "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015). "Harmlessness" in the context of section 2254 means "the federal court has 'grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict."'" *Id.* at 2197-98 (citation omitted). This standard, which is taken from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), requires "more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2198 (quoting *Brecht*, 507 U.S. at 637); *cf. Chapman v. California*, 386 U.S. 18, 24 (1967) (standard for harmlessless on direct review from a state court to the U.S. Supreme Court is whether the error was "harmless beyond a reasonable

doubt"). When a state court determines the harmlessness question, "the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis*, 135 S. Ct. at 2199. Within this disciplined framework, the court addresses Stovall's claim that is properly before the Court.

### 1. *Batson v. Kentucky*

A *Batson* challenge has three steps: (1) if the defendant makes a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race, (2) the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question, and (3) the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Rice v. Collins*, 546 U.S. 333, 338 (2006) (quotation marks and citations omitted).

The focus of Stovall's case is on the first step. The United States Supreme Court "did not intend the first step to be so onerous that a defendant would have to persuade the judge--on the basis of all the facts, some of which are impossible for the defendant to know with certainty--that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 170 (2005). A defendant may establish a prima facie case of discrimination by showing that the defendant is a member of a cognizable racial group, that the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire, that peremptory challenges allow "'those

to discriminate who are of a mind to discriminate,'" and "*that these facts and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96 (emphasis added) (citation omitted).

"The prima facie case determination cannot be based on numbers alone, but should be made in light of the totality of the circumstances." *United States v. Saylor*, 2015 WL 5209400, at *5 (11th Cir. Sept. 8, 2015) (citation omitted); *see also United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir. 1990) ("numbers alone are not sufficient to establish or negate a prima facie case" (quoting *United States v. Dawn*, 897 F.2d 1444 (8th Cir. 1990)), *cert. denied*, 504 U.S. 904 (1991). "For example, 'the number of persons struck takes on meaning *only* when coupled with other information such as the racial composition of the venire, the race of others struck, or the voir dire answers of those who were struck compared to the answers of those who were not struck.'" *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1044 (11th Cir. 2005) (citations omitted). What follows is not an exhaustive list, but some relevant circumstances a court may consider in determining whether a defendant has made a prima facie showing under *Batson* include:

- "a pattern of strikes against jurors of a given race or gender," *Saylor*, 2015 WL at *5; *see also Johnson*, 545 U.S. at 164, 173 (holding defendant established prima facie case where prosecutor used 3 of 12 strikes to remove all 3 African-American prospective jurors); *Hernandez v. New York*, 500 U.S. 352, 375 (1991) ("Disproportionate effect may, of course, constitute evidence of intentional discrimination."); *Batson*, 476 U.S. at 100 ("Because the trial court flatly rejected the objection [to the prosecutor's removal of all African-American persons on the venire] without requiring the prosecutor to give an

- explanation for his action, we remand this case for further proceedings.");
- the prosecutor's questions and statements during voir dire, *Miller-El v. Dretke*, 545 U.S. 231, 253, 256-57 (2005) (discussing the disparate questions asked of jurors of different races); *see also Allison*, 908 F.2d at 1538;
- the prosecutor's failure to ask meaningful questions to the struck jurors, *Miller-El*, 545 U.S. at 244-46;
- evidence of past discrimination in jury selection, *id.* at 266 ("If anything more is needed for an undeniable explanation of what was going on, history supplies it. The prosecutors took their cues from a 20-year-old manual of tips on jury selection . . . .");
- whether "the subject matter of the case . . . is racially or ethnically sensitive," *Ochoa-Vasquez*, 428 F.3d at 1045 n.39 (noting that, in contrast to case in which defendants were prosecuted for racially motivated hate crime against blacks, race was not relevant to the subject matter of Ochoa's case);
- whether the defendant was the same race as the struck jurors, *United States v. Hill*, 643 F.3d 807, 840 (11th Cir. 2011) (holding most of the defendants and their lawyers were not the same race as the jurors, therefore race did not weigh in favor of a prima facie case);
- whether the prosecutor struck minority members of the venire who seemed to have the same qualities as those nonminorities who were selected for the petit jury, *Saylor*, 2015 WL 5209400, at *5; as well as
- whether the jury included unchallenged members of the defendant's race, *Allison*, 908 F.2d at 1537 ("the unchallenged presence of three blacks on the jury undercuts any inference of impermissible discrimination that might arise simply by the striking of other blacks").

Trial judges, who are in a better position to consider these factors than a reviewing court, are granted considerable deference in applying *Batson*. *See Davis*, 135 S. Ct. at 2201, 2207. On federal habeas review, § 2254(d) requires an added layer of deference. *See id.* at 2209.

### 2. State Court Decision

At trial, the venire consisted of 24 jurors; 17 were white, and 7 were black. *Doc. No. 8-13*, at 42. Stovall argued in state court that the prosecutor violated *Batson* by engaging in a pattern of strikes to exclude 4 of the 7 members of Stovall's own racial minority on the

panel, or 57 percent of the panel; and he argued the prosecutor used 4 of his 6 strikes, or 66 percent of his strikes, to exclude persons of Stovall's same racial minority from the jury. Stovall's counsel at trial represented that blacks made up 49 percent of the population in Montgomery County; that only 29 percent of the panel, or 7 of 24, was black; and that only 16 percent of the jury, or 2 of 12, was black. *Doc. No. 8-13*, at 43-44. The trial court ruled that Stovall failed to make out a prima facie case. *Id.*

In ruling on the issue, the Alabama Court of Criminal Appeals accurately described the standard in *Batson*. *Doc. No. 8-18*, at 2-3 (citing state cases that, in turn, cite *Batson*, 476 U.S. at 93-94). Then it held:

> In the present case, we find that Stovall did not make a prima facie showing that the strikes were discriminatory. . . . [A]fter the jurors were struck in this case, defense counsel made a *Batson* motion, arguing only that the State used four of its six strikes to remove black individuals from the jury, and that the percentage of black members left after jury selection was disproportionate to the percentage of black individuals on the jury panel, as well as disproportionate to the percentage of black individuals in the general population of Montgomery County. *Numbers or statistics alone* are insufficient grounds to support a claim of discrimination under *Batson*. *Banks v. State*, 919 So.2d 1223, 1230 (Ala. Crim. App. 2005); *Blackmon v. State*, 7 So.3d 397 (Ala. Crim. App. 2005). Moreover, *numbers alone* are insufficient to shift the burden to the State to explain its peremptory strikes. *Ex parte Walker*, 972 So.2d 737, 741-42 (Ala. 2007); *Ex parte Trawick*, 698 So.2d 162 (Ala. 1997). Accordingly, the State was not required to give its reasons for the strikes and the trial court's denial of Stovall's *Batson* motion was not in error.

*Doc. No. 8-18*, at 3-4 (emphasis added).

### 3. Discussion

Stovall does not challenge the underlying state court factual determinations, and they

are presumed correct. 28 U.S.C. § 2254(e)(1). Respondent maintains that the Alabama Court of Criminal Appeals decision is consistent with *Batson*, and Stovall has not shown the decision ran afoul of 28 U.S.C. § 2254(d)(1) or (2).

The Alabama Court of Criminal Appeals' characterization of Stovall's challenge as being based on "numbers alone" unfortunately overlooks the context in which the strikes were made, that is, "the racial composition of the venire [and] the race of others struck." *See Ochoa-Vasquez*, 428 F.3d at 1044. These were two circumstances the court had just acknowledged that Stovall raised, in addition to the numbers. *Doc. No. 8-18*, at 3. The Supreme Court has drawn an inference of discrimination based on the disproportionate effect on the makeup of a jury when a prosecutor struck jurors who were the same minority race as the defendant. For example, in *Batson*, the Supreme Court held the defendant created a prima facie case when the prosecutor struck 100 percent of the minority jurors. *Batson*, 476 U.S. at 100. And in *Johnson* the Court determined the defendant made a prima facie showing where the prosecutor used 100 percent of the prosecutor's peremptory strikes to remove minority jurors. *Johnson*, 545 U.S. at 164, 173.

Nevertheless, the Alabama Court of Criminal Appeals correctly stated that *Batson* requires a determination be made based on the "totality of the relevant facts." *Batson*, 476 U.S. at 94; *Doc. No. 8-18*, at 3. Moreover, Stovall does not cite, and this court has not found, Supreme Court caselaw holding that minority exclusion rates like those in Stovall's case are sufficient to create a prima facie case. Contrary to the 100 percent removal rate in *Batson* and

*Johnson*, the prosecutor in Stovall's case used only 66 percent of his peremptory challenges to remove from the panel only 57 percent of persons like Stovall, and importantly two black jurors remained on Stovall's jury.[2]  Finally, even assuming the Alabama state court incorrectly set out and applied the relevant United States Supreme Court standard, any error in doing so was harmless. *See Davis*, 135 S. Ct. at 2197-98 (describing harmless standard). This court has no "grave doubt" that such a "trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quotation marks and citations omitted).

The Alabama state court decision in Stovall's case cited the applicable standard in *Batson*, and the decision was not contrary to an actual Supreme Court decision. *See* 28 U.S.C. § 2254(d)(1). Stovall points to no Supreme Court case involving facts materially indistinguishable from those in his case but reaching a different result, and the decision was not "an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams*, 529 U.S. at 411-

---

[2]Although not a Supreme Court case, the Court of Appeals for the Eleventh Circuit has concluded that "'the unchallenged presence of two blacks on the jury undercuts any inference of impermissible discrimination that might be argued to arise from the fact that the prosecutor used three of the four peremptory challenges he exercised to strike blacks from the panel of potential jurors and alternates.'" *Allison*, 908 F.2d at 1537 (quoting *United States v. Dennis*, 804 F.2d 1208, 1211 (11th Cir. 1986)). Alabama courts have applied *Batson* similarly. *E.g.*, *Banks*, 919 So.2d at 1229-30 (considering that State used 13 of 18 strikes to remove blacks from the panel, and the jury included 4 blacks); *id.* at 1230 (citing *Woods v. State*, 845 So.2d 843, 844-45 (Ala. Crim. App. 2002), where State used 5 of 7 strikes to remove blacks from the panel, and the jury included 8 blacks).

13. In addition, the decision was not an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). Finally, even assuming the Alabama state court incorrectly set forth or applied *Batson*, the error was harmless. *See Davis*, 135 S. Ct. at 2197-98. Stovall is not entitled to habeas relief on his *Batson* claim that is properly before the court.

### C.  NO EVIDENTIARY HEARING IS NEEDED

Stovall does not specifically request an evidentiary hearing in this federal court, and none is needed. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). The court is not required hold an evidentiary hearing on Stovall's claims that are properly before the court because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.*

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Stovall Maurice Cartez Stovall be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before **February 16, 2016** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 2nd day of February, 2016.

                                         /s/Charles S. Coody
                                  CHARLES S. COODY
                                  UNITED STATES MAGISTRATE JUDGE